## Benjamin Decker v. David Jaques.

In an action by a lessee of public wharves, for wharfage of a boat, constructed simply as a depositary for oysters brought to the city for sale—for the most part boarded up at the sides—square at both ends, one of which was fastened to the bulkhead, midway between two piers which formed a slip, and connecting with the bulkhead by gang planks, over which oysters received at the other end were generally discharged directly on to the wharf or street—but having her stern attached by a rope to similar boats lying along side; *held*, that under the act of the legislature and the ordinances of the corporation, the boat was liable for full wharfage, it being conceded, that within their meaning, the bulkhead was a "wharf," and the boat a "vessel."

The statute intended to make a distinction between those vessels which enjoy the convenience and security of making fast to a wharf, and *there* unloading; and those which, having no immediate access to the wharf, are made fast to other vessels lying within; the latter being liable for half wharfage only.

The ordinance of the corporation fixing a uniform rate of wharfage for their own

Decker v. Jaques.

wharves, at less than permitted by the statute, was not intended to enlarge the number of cases in which half wharfage is allowed by the act referred to.

Meaning of the words "when not having dock berths," as used in the ordinance in question.

This court has repeatedly held, that the finding of a justice upon a question of fact is to be treated like the verdict of a jury, and not to be disturbed on appeal, unless very clearly against the weight of evidence.

ACTION for wharfage. The case came up on appeal by the defendant, from the marine court, where judgment was entered for the plaintiff. The facts appear in the opinion. It may be stated, however, that there was a communication to the pier, from the side of the boat, through and over similar vessels lying alongside; and that, in some trifling instances, oysters had been thus landed on the pier. But the only usual and convenient manner of loading and unloading the boat, was to take her cargo in by the stern, and discharge it over her bow, direct upon the bulkhead, to which she lay bow on, and permanently fastened.

*Charles Jones*, for appellant.

*W. S. Rowland*, for respondent.

BY THE COURT. WOODRUFF, J.—The plaintiff, as lessee of public wharves, brought his action for wharfage of the defendant's oyster boat, which lay at the bulkhead in the slip between Fulton and Dey streets, in this city, at the rate of 30 cents per day, for 333 days, amounting to $99 90.

The defendant paid into court the sum of $50, together with the costs incurred to the time of such payment, and thereupon resisted the plaintiff's recovery of any other or further sum, upon the ground that by the ordinance of the corporation regulating the rates of wharfage accruing from the wharves belonging to the city, he was only chargeable with half wharfage, or 15 cents per day, for the period in question.

It appears that the defendant's boat is constructed, not for sailing purposes, but as a receiving vessel or depositary for

VOL. I. 6

oysters brought to the city for sale, and is made square at each end—is for the most part boarded up at the sides and covered over—and, in general, receives oysters at one end, and discharges them at the other. That she was made fast at one end to the bulkhead in question, midway, or thereabouts, between the two piers forming the slip, and she was connected with the bulkhead by gang planks leading directly on board from the wharf or street, over which oysters were discharged on to the wharf or street.

Section 212 of the act to reduce, &c., relating to the city of New York, (2 Rev. Laws, p. 429,) prescribes the rates of wharfage which it shall be lawful for owners of wharves in the city of New York to charge for all ships and vessels "*using their wharves*," respectively, "for every day such ship or vessel *shall use* or be made fast to any of the said wharves."

And section 215 of the same act provides, "that every ship or other vessel which shall make fast to any other ship or vessel that shall be fastened to any wharf, and being so fastened shall load, unload or careen, shall pay the *one half of the rate of wharfage* such ship or vessel would have been liable to pay, if fastened to such wharf, and *there* loaded, unloaded or careened."

An ordinance of the corporation of this city, in relation to wharfage, at such wharves as are the property of the city, provides, "that for all vessels of more than five tons burthen, and under 20 tons, there shall be paid only 30 cents a day, *subject to abatement or half wharfage, according to the provisions of the laws of this state, when not having dock berths*."

It was not claimed by the defendant, in the court below, nor is it now claimed, that the bulkhead is not a "wharf" within the meaning of this statute and the ordinance of the corporation; but the argument of the appellant's counsel concedes that the bulkhead is a wharf within their provisions, and that the defendant's boat is a vessel within their meaning.

The appellant contends, that under this ordinance he was not liable for more than half wharfage, and on the trial en-

·deavored to prove, that "not having dock berths," means *not lying broadside to the* pier or wharf.

It seems to me impossible to read attentively the ordinance in question, together with the above sections of the statute, without giving to the proviso in the ordinance the same meaning which is intended by section 215 of the· act. That is the law which defines the cases and circumstances in which "half wharfage" only shall be paid, and the corporation, when fixing a uniform rate of wharfage for the use of their own wharves, at something less than the statute allowed them to charge, ·made that rate subject to abatement or half wharfage according to the provisions of the act. If they intended to provide a *new class* of cases in which that abatement should be made, it was not only senseless to say, "according to the provisions of the laws," &c., but it imported falsehood.

Thus, for example, "subject to abatement or half wharfage, according to the provisions of the laws of this state, when lying on the east river side of the city." There are no provisions of the laws of this state which could be so referred to.

The plain reading of the ordinance is, "subject to abatement, &c., when, according to the provisions of the laws, &c., not having dock berths," and it seems to me too plain to admit of much discussion; for surely it cannot be contended that the reference to the laws of the state was made for a definition of "half wharfage." To show that *half* wharfage meant *one half* the *full* rate of wharfage, certainly required no such reference.

This appeal must therefore be determined by the meaning of sect. 215, above referred to, and the question is, Was this ·vessel made fast to another vessel that was fastened to a wharf, and loaded and unloaded being so fastened?

Or was she fastened to such wharf, and *there* loaded and unloaded?

Upon the facts the justice has found, and we think correctly, that according to her usual and most convenient manner of loading and unloading, she did unload over her bow on the bulkhead, to which she was firmly and constantly attached. ·And to say that because the owner· thought proper to secure

her stern by a rope attached also to another vessel alongside, therefore she came within the definition contained in § 215, is trifling with the plain meaning and good sense of the statute.

The statute intended to make a distinction between those vessels which enjoyed the convenience and security of making fast to a wharf and *there* unloading, and those which, having no immediate access to the wharf, were made fast to other vessels lying within, and were thus at the disadvantage of inconvenient and insecure positions while unloading.

Upon the facts found by the justice, regarding the manner of this vessel's construction—the manner of using her—the usual and customary mode of loading and unloading—and especially that she was made fast to the wharf and *there* unloaded—I think the *vessel* was liable to pay full wharfage, under the act and under the ordinance.

But if it were conceded that the ordinance *may*, in fact, have provided for only half wharfage in a new class of cases, that, "when not having dock berths," *may* mean something other than the contingency provided for in the statute; the questions presented were, What is the meaning of "having dock berths?" and had this vessel a dock berth?

We cannot say, as *matter of law*, that "having a dock berth" means any thing other than having a place for loading and unloading at a dock, which is in substance the meaning above given to the expression.

If its meaning be technical, and therefore susceptible of proof by witnesses familiar with the business in reference to which the term is used, then the inquiries, what is the meaning of "having dock berths," and, also, had the vessel in question a dock berth, were both questions of fact, in relation to which much testimony was given by both parties, and upon which the justice has found adversely to the appellant. This finding is to be treated as we would treat the verdict of a jury, and is not to be disturbed on appeal, unless very clearly against the weight of evidence. This view of the finding of the justice accords with the decisions of the late supreme court and court of errors, (see *Stryker* v. *Bergen*, 15 Wend. 491;

*Noyes* v. *Hewett*, 18 Wend. 141,) and has been held by this court in one or more cases, at nearly every term since appeals were directed to be made to us.

So far from deeming this a case in which the finding should be set aside as against the weight of evidence, I regard it rather as sustained by the testimony.

The judgment must be affirmed, with costs.